125 F.3d 858
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Claire A. DOUCETTE, Plaintiff-Appellant
v.
SAN DIEGO UNIFIED PORT DISTRICT; Don L. Nay, Director, San
Diego Unified Port District; W. Daniel Larsen,
Commissioner, San Diego Unified Port District; PHIL
Creaser, Commissioner, San Diego Unified Port District;
Milford W. Portwood, Commissioner, San Diego Unified Port
District; Delton C. Reopelle; William B. Rick,
Commissioner, San Diego Unified Port District; Louis
Wolfsheimer, Commissioner, San Diego Unified Port District;
Susan Lew, Commissioner, San Diego Unified Port District;
David L. Malcolm; J. Michael McDade, Commissioner, San
Diego Unified Port District; Paul N. Speer, Commissioner,
San Diego Unified Port District; Patricia A. McQuater;
Frank Urtasun, Commissioner, San Diego Unified Port
District; Jess Van Deventer, The State of California,
Defendants-Appellees
 No. 95-56126.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 7, 1997**
Decided Oct. 10, 1997.
 
 Appeal from the United States District Court for the Southern District of California Marilyn L. Huff, District Judge, Presiding
 Before: PREGERSON, D.W. NELSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Claire A. Doucette appeals the district court's judgment dismissing her action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Doucette claims that under the Submerged Lands Act, 43 U.S.C. §§ 1301-15, Congress transferred ownership of the San Diego Bay ("Bay") from the State of California ("State") to the federal government. Based on this premise of federal ownership, Doucette argues that the federal government holds exclusive jurisdiction over the Bay. She thereby challenges the authority of the State to delegate regulatory power to the San Diego Unified Port District ("Port District"). In addition, Doucette argues that by enacting comprehensive legislation, the federal government has preemptively occupied the field of anchorage and mooring. Finally, Doucette claims that the local ordinances adopted by the Port District are invalid because they conflict with federal and international law.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. 1291, and we affirm the district court.
 
 
 4
 A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. See, e.g., Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995).
 
 
 5
 Doucette argues that under the Submerged Lands Act, Congress transferred ownership of the Bay to the federal government. In passing the Submerged Lands Act, however, Congress merely dictated that lands beneath navigable waters within three miles of state boundaries belong to the respective states, thereby negating the Supreme Court's ruling in United States v. California, 332 U.S. 804 (1947) (holding that submerged lands belonged to federal government). Contrary to Doucette's argument, the Submerged Lands Act did not transfer title of inland waters to the federal government; rather, the State still holds title to navigable waterways within its borders, as well as the lands beneath them, as a trustee for the public. See Graf, 7 Cal.App. 4th at 1228.
 
 
 6
 Although the State holds title to the Bay, the Submerged Lands Act provides concurrent federal and state jurisdiction over submerged lands and the waters above them. See Barber v. Hawaii, 42 F.3d 1185, 1190 (9th Cir.1994). The State's power to control local waterways is absolute except as limited by the federal government, which may adopt preemptive regulations. See Graf v. San Diego Unified Port Dist., 7 Cal.App. 4th 1224, 1228-29 (1992). Absent express statutory language, federal preemption occurs only if: 1) the subject area addressed is one of utmost federal sensitivity; 2) Congress has implicitly occupied the field with comprehensive legislation that leaves no room for state supplementation; or 3) local regulation actually conflicts with federal law. Beveridge v. Lewis, 939 F.2d 859, 862 (9th Cir.1991). As discussed below, none of the preemption criteria is met in the present case.
 
 
 7
 Anchorage and mooring is not a federally sensitive subject area. In fact, the Ninth Circuit has acknowledged "the Supreme Court's longstanding recognition that anchorage and mooring rules are best left to the states in the absence of compelling government interests to the contrary." Barber, 42 F.3d at 1193; see also Beveridge, 939 F.2d at 863 (noting that local communities are more competent to regulate anchorage and mooring than the federal government). Doucette points to no compelling federal interests that support federal preemption here.
 
 
 8
 Further, Ninth Circuit precedent clearly establishes that the federal government has not implicitly preempted state regulation of anchorage and mooring by enacting sweeping legislation. Many of the arguments raised by Doucette were considered and rejected by this Court in Barber v. Hawaii, in which we upheld the State of Hawaii's delegation of regulatory authority over anchorage and mooring to the Hawaii Department of Transportation. Notably, this Court specifically repudiated the claim that "federal regulation in the field of navigation is so extensive that it manifests an implicit intent on the part of Congress to preempt [the State's] actions." Barber, 42 F.3d at 1190. Instead, the court found that "[f]ederal laws and regulations have not occupied the field of anchorage and mooring." Id. at 1190, 1193.
 
 
 9
 Doucette nonetheless argues that the federal government exhibited an intent to occupy the field by enacting a comprehensive regulatory scheme that addresses anchorage and mooring. As an example, Doucette has supplied a copy of the Army Corps of Engineers' November 24, 1995 "Policy Statement on Floating Structures." A letter submitted by the Department of the Army, however, provides as follows:
 
 
 10
 We appreciate the opportunity to clarify some of Ms. Doucette's misconceptions concerning this policy.... The sole objective of this policy statement is to provide additional guidance for the implementation of Section 10 of the River and Harbor Act of 1899 on the navigable waterways within the Los Angeles District of the Corps of Engineers.
 
 
 11
 See Dept. of Army letter, exhibit "C", Appellee's Suppl. Brief (emphasis in original); see also 33 C.F.R. 320.1(a)(5) (acknowledging joint authority of federal and state governments to adopt complementary regulatory programs).
 
 
 12
 Other federal regulations to which Doucette refers explicitly recognize state and local governments' continuing roles in regulating anchorage and mooring. For instance, 33 C.F.R. § 110.90 states that "mariners anchoring in San Diego Harbor should consult applicable local ordinances of the San Diego Unified Port District," thereby acknowledging the joint jurisdiction of federal and local authorities over local waters. Likewise, 33 C.F.R. § 110.210 provides that the harbor shall be administered by the Port District.
 
 
 13
 Doucette's reliance on 33 U.S.C. § 471 to establish preemption is also misplaced. Section 471 authorizes the Secretary of Transportation to exercise discretion in establishing anchorages when federal maritime or commercial interests so require. No evidence before the Court suggests that the circumstances encompassed by section 471 presently exist. Nor does section 471 indicate that federal interests would preclude the state from adopting compatible regulations. In fact, the Coast Guard, which is responsible for enforcing section 471, has acknowledged that local anchorage ordinances are consistent with present regulations. See Graf v. San Diego Unified Port Dist., 205 Cal.App.3d 1189, 1193 (1988). It is clear that in adopting section 471, the federal government did not exhibit any intent to preempt local regulation. See Barber, 42 F.3d at 1192.
 
 
 14
 Thus, Doucette's position that the federal government has preemptively occupied the field of anchorage and mooring is not persuasive. Accordingly, the local regulations at issue here would only be preempted if they conflict with federal law. Doucette has provided no convincing evidence of conflict, and this Court finds none.
 
 
 15
 Although Doucette vaguely suggests that the Port District's regulations conflict with federal statutes, her arguments have no merit. If Congress had intended to depart from its historic policy of permitting state regulation of anchorage and moorings, Congress would have emphasized such a departure with explicit preemptive language. See Cummings v. Chicago, 188 U.S. 410, 431 (1903). None of the federal statutes cited by Doucette contains such language.
 
 
 16
 This Court is also unpersuaded by Doucette's claims that the Port District's regulations are unconstitutional. While Doucette claims that the anchoring regulations at issue violate her constitutional right of freedom to travel, the Constitution does not encompass the right to unregulated long-term anchoring in public waters. See Graf, 7 Cal.App. 4th at 1232-33. Moreover, contrary to Doucette's contentions, the disputed regulations do not conflict with federal admiralty law, the California Act of Admission, or the Rivers and Harbors Act.
 
 
 17
 Nor are we persuaded by Doucette's argument that the regulations conflict with the Convention on the Territorial Sea and the Contiguous Zone, April 29, 1958, 15 U.S.T. 1606. The Treaty does not provide the right to long-term anchorage. Rather, the Treaty merely permits "continuous and expeditious" passage and allows foreign vessels to stop and anchor if "incidental to ordinary navigation or rendered necessary by force majeure or by distress." See Barber, 42 F.3d at 1195-96 (citing 1958 Convention, art. 14, p 3, 15 U.S.T. at 1610). No such circumstances exist here, and in any event, Doucette does not argue that her boat is a foreign vessel. Moreover, as the Treaty requires all vessels to comply with the laws and regulations of the coastal state, it is unclear why the Port District ordinances in question would conflict with the Treaty. See id. at 1195.
 
 
 18
 For the above reasons, we conclude that the State holds the authority to regulate the Bay and to delegate regulatory power to the Port District. The ordinances at issue do not conflict with federal law.[1]
 
 
 19
 AFFIRMED.
 
 
 
 **
 The panel unanimously find this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellant's request that we stay California superior court case 689204 is denied